MEMPHIS KEELEY INSTITUTE et al. v. LESLIE E. KEELEY CO.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1906.)

No. 1,408.

APPEAL—APPEALABLE DECREE—DISMISSAL AS TO SUBORDINATE ISSUE.

A decree dismissing a bill, in so far as relates to one branch only of the controversy between the parties, and that a subordinate one, leaving the principal issue in the case undetermined, is not a final decree, and is not appealable.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 501.]

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

C. W. Metcalf and T. F. Kelley, for appellants.
T. M. Scruggs and T. E. Barry, for appellee.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. The appellee, Leslie E. Keeley Company, an Illinois corporation, with its principal place of business at Dwight in that state, is the owner and proprietor of what it terms the "Chloride" or "Double Chloride of Gold Remedies" for the treatment and cure of opium, liquor, and tobacco habits and neurasthenia, the process of making which is secret and was invented by Dr. Leslie E. Keeley. February 15, 1892, appellee entered into a written contract in relation to said remedies as to the state of Tennessee with the appellant, C. B. James, who pursuant to one of its provisions at once assigned it to the appellant The Keeley Institute, a Tennessee corporation of which he was president, which on December 27, 1893, assigned it to the appellant Memphis Keeley Institute, another Tennessee corporation, of which appellant C. B. James is president. June 14, 1898, appellee entered into a supplemental written contract with said appellant Memphis Keeley Institute. By the terms of said contract, appellee was bound to furnish to said appellant its remedies for sale and administration at its Institute in Memphis, Tenn., at certain prices, so long as it did a certain amount of business, and not to furnish them for sale and administration in said state to any one else or to sell or administer them itself in said state, except for home treatment. By the terms thereof, said appellant Memphis Keeley Institute was bound to plainly designate before the public that the appellee's remedies were exclusively used by it at its institute in all its treatment of said habits and neurasthenia, to treat patients therein for a sum not less than $25 per

week, exclusive of special attendance, to make certain monthly reports, to observe and abide by the rules and regulations made by appellee for the government of Keeley Institutes and the administration of Keeley remedies, as set forth in "The Keeley Institute Hand Book" issued in March, 1896, and to treat patients as to remedies and methods in the same manner in which patients were treated by appellee at Dwight. The contracts contained other provisions, but it is not material to refer to them. Appellee furnished said remedies to said appellant Memphis Keeley Institute from the time of the assignment of the contract to it until September 26, 1901. On that date it notified said appellant that it would not furnish it any further remedies, except what might be necessary to complete the treatment of patients already in line, and thereafter did not furnish it with any remedies, save to that extent. The ground upon which appellee took this action was that said appellant had violated its obligations in said contract, in not plainly designating before the public that the Keeley remedies were exclusively used by it in the treatment of said habits and neurasthenia, in not making said monthly reports, in not observing and abiding by said rules and regulations in certain particulars, and in not treating patients in the same manner in which they were treated at Dwight.

On November 1, 1902, over a year afterwards, this suit was brought by appellee against the appellants. In addition to alleging the facts hereinbefore related, the bill alleged that since September 26, 1901, the date of said notification, said appellant had continued to hold out to the public that it had the sole and exclusive right to sell and administer said remedies for the state of Tennessee, and to treat patients at its institute with remedies which it claimed were Keeley remedies, but which were not such remedies, and did so with the intent alone of annoying and hindering appellee in the sale and administration of its remedies and the establishment and prosecution of its business in said state, and for the purpose of producing vexatious litigation and that said remedies might be brought into disrepute and its good name destroyed; that the defendants E. C. James and C. C. James, appellants here, wife and son of said C. B. James, were claiming certain rights and privileges under said contracts, the exact nature of which was unknown; and that the defendants C. B. James and C. C. James, appellants here, had in their possession certain bottles of said remedies obtained by them previous to September 26, 1901, which they were exhibiting to prospective patients as evidence of their ability to sell and administer plaintiff's remedies and as a means of persuading them to enter into contracts with the defendant, Memphis Keeley Institute for treatment, and with no intention of administering the remedies to them.

The relief sought is threefold, to wit: (1) A writ of injunction restraining and enjoining the defendant from the sale or administration of said remedies and from claiming that said remedies were employed in the treatment of said habits and neurasthenia until the further order of the court, and that upon final hearing the injunction be made perpetual; (2) that said contract of February 15, 1892, together with the supplement thereto of date June 14, 1898, be delivered up and can-

celed under the orders of the court; and (3) that said defendants and each of them be ordered and decreed to deliver the plaintiff any and all of the remedies in their possession or within their control, whenever or wherever the same were obtained, offering to reimburse them for the full contract price paid for same.

It is evident that the gravamen of plaintiff's complaint was the assertion and claim of the defendant Memphis Keeley Institute that it had the right to sell and administer said remedies in said state, and that it was treating patients with them at its institute, and the main relief sought was an injunction against any further assertion or claim to that effect. So far as the bill sought a delivery up of the contracts for cancellation and of the remedies still in the possession of the defendants, it was for the purpose of preventing them from being used thereafter, as the basis of such assertion and claim.

Answers were filed by the defendants. They consisted solely of denials. No affirmative defense was set up by either defendant. The defendant Memphis Keeley Institute admitted that it claimed the exclusive right to the sale and administration of said remedies in said state. It denied that after about October 31, 1901, it had treated patients with Keeley remedies, or that it had held out to patients that they were being treated therewith. It was admitted further that said institute had in its possession a few bottles of said remedies, and denied that they were used to induce prospective patients to take treatment, supposing they were getting the Keeley treatment when they were not.

The lower court, upon hearing, rendered a decree dismissing the bill to a certain extent, and making provision as to payment of costs, and reciting therein a certain decision made by it, upon the basis of which it rendered the decree of dismissal. That decision was that:

"The plaintiff and defendants, as matter of law and as matter of fact, have abandoned and voluntarily rescinded these contracts before the institution of this suit, about September 26. 1901, and thereby terminating the contracts and all of the rights and obligations on behalf of or against either party, and that there is not therefore, and was not at the date of the institution of this suit, any valid subsisting contract between these parties which could be rescinded; the parties having put an end to such contracts by voluntary abandonment and rescission."

The decree of dismissal of the bill was "in so far as it seeks cancellation of said abandoned and rescinded contracts." It was further recited therein that the defendants urged as a defense against the bill, and as a reason why plaintiff was not entitled to relief, "that the remedies and products covered by the plaintiff's trade-mark are false and not genuine, and that they are therefore a fraud upon the public"; and as to this question it was said in the decree that it was "an issue which in the court's opinion cannot properly be made in this case, and is for that reason left open and undecided, and the dismissal of the bill is without prejudice or adjudication in regard to that particular issue."

The appeal prayed and granted from said decree to this court was "from so much of said decree as holds that the plaintiff and defendants, as a matter of law and as a matter of fact, abandoned and voluntarily rescinded the contracts in question before the institution of this suit, and from so much of said decree as holds that the defense that plaintiff

is not entitled to relief, upon the ground that the remedies and products covered by plaintiff's trade-mark are false and not genuine and are a fraud upon the public, cannot be properly made in this case, and from so much of said decree as adjudges any part of the costs against said defendants."

This case presents the question as to whether this court has jurisdiction of the appeal. No motion has been made to dismiss it. But that is immaterial. If in fact we have no jurisdiction, it is our duty to dismiss upon our own motion. Hilton v. Dickinson, 108 U. S. 165, 2 Sup. Ct. 424, 27 L. Ed. 688; Estis v. Trabue, Davis & Co., 128 U. S. 225, 9 Sup. Ct. 58, 32 L. Ed. 437.

The appellants contend that the finding of the court that the contract had been voluntarily rescinded by the parties to it was a finding not based upon any issue made by the pleadings, or by the contentions of the parties; that it is injurious to them because it cuts them off from all remedy for the breach of the contract by the complainant; and that the decree which rests upon that finding is therefore erroneous. But if, as we think, the appeal must be dismissed because not final, we are not authorized to pass upon the merits of the decree, or the reasons on which it is founded, and decide whether the decision was right or wrong. The decree does not profess to dismiss the bill, but only one branch of the controversy, and that a subordinate one. It leaves undetermined the question whether the appellants are conducting their business upon the false pretense that they are using the appellee's remedies, when in fact they are using something else, and thereby disparaging the appellee's remedies and injuring their business, and the consequent question whether the appellees are entitled to an injunction or not. Having litigated these questions, the appellant is entitled to have them determined. And there is nothing that we can see which prevents either of these parties from still bringing the cause on for an adjudication of the question or questions which have not been disposed of.

If the Circuit Court shall be of opinion that the business sought to be promoted or protected by the bill is a fraudulent business, one which is injurious to the public, and therefore dismiss it out and out for that reason, without canvassing or deciding upon the merits as between the parties, of course its decree would be final. If it should hold otherwise upon that question, and should decide for or against the appellants upon the other undisposed of matters in controversy, then the time would come for the entry of a final decree, and all the orders and partial decrees which had been made in the cause would be reviewable on an appeal. The reasons for requiring that a decree must be final in order to be appealable are that the cause may not be delayed by successive appeals, and that the appellate court should not be hindered with the duty of reviewing the proceedings in the lower court piecemeal.

The question of costs is ancillary and stands in the same predicament. If it is reviewable at all, it may be reviewed on appeal from a final decree.

The appeal must therefore be dismissed, with costs.